# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | | | |
|---|---|---|---|
| STERLING DAVIS, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | No. | 3:18-CV-532-HSM-HBG |
| | ) | | |
| GRADY PERRY, Warden, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## MEMORANDUM OPINION

Petitioner Sterling Davis, a Tennessee inmate proceeding pro se, has filed a federal habeas petition pursuant to 28 U.S.C. § 2254 challenging the legality of his confinement under Monroe County Circuit Court judgments of conviction for possession of 300 grams or more of cocaine with intent to sell, possession of more than one-half ounce but less than 10 pounds of marijuana with intent to sell, and possession of drug paraphernalia. Having considered the submissions of the parties, the State-court record, and the law applicable to Petitioner's claims, the Court finds that the petition should be denied.

## I. RELEVANT BACKGROUND & PROCEDURAL HISTORY

Conway Mason, a detective with the Monroe County Sheriff's Department, obtained information from various sources concerning illegal narcotics sales at the Madisonville residence of Petitioner, and he conducted a trash pull at the residence and found a marijuana stem and several discarded baggies [Doc. 6-4 p. 12-13, 61; Doc. 6-7 p. 13-14]. Thereafter, Detective Mason arranged for a confidential informant ("CI") to enter the residence [Doc. 6-4 p. 61; Doc. 6-7 p. 14]. The CI observed marijuana in the residence on two separate occasions [*Id*.]. Based on this information, Detective Mason sought and secured a search warrant for Petitioner's residence, which was executed on September 5, 2010 [*See, e.g,* Doc. 6-7 p. 12].

At trial, Detective Mason testified that Petitioner and another individual were in the living room when he and other officers arrived to execute the search warrant [Doc. 6-4 p. 14]. Detective Mason stated that officers first secured Petitioner and his companion, cleared the residence, and then searched the home in systematic fashion [*Id.* at 14-15]. Among the items uncovered in the search were 305.8 grams of cocaine, 428.3 grams of marijuana, $154,844 in cash, plastic baggies, a vacuum-pack "FoodSaver" machine, four sets of scales, and a small spoon [Doc. 6-7 p. 26, 28-29]. Detective Mason explained that the presence of scales, plastic baggies, and the FoodSaver machine indicated to him that the drugs were being packaged for resale [Doc. 6-4 p. 23, 26, 31]. Most of the seized items were found in a back bedroom in which there was a photograph of Petitioner on the wall, a photograph of the car that Detective Mason had regularly seen Petitioner driving, a box of checks in Petitioner's name, and a Sentry safe containing a wallet with two credit cards in Petitioner's name, along with Petitioner's social security card, two of Petitioner's expired driver's licenses, and various other papers and photographs [*Id.* at 24-25, 27-28, 54-55]. Detective Mason testified that he found the car he had seen Petitioner driving, a 1997 Nissan, outside on the property and seized it in accordance with the drug forfeiture process [*Id.* at 33]. There was also a locked storage building on the property, which Detective Mason searched after finding the key to the lock on Petitioner's key ring [*Id.* at 57-58]. Detective Mason described the forfeiture process and identified Petitioner's signed petition for a hearing on the seizure of the property in which Petitioner listed himself as the owner of the $154,844 in cash [*Id.* at 52]. The petition was admitted as a trial exhibit [*Id.*].

On cross-examination, Detective Mason acknowledged that he was the one who identified the residence as Petitioner's, that the address on Petitioner's checks was different from the address of the residence they searched, and that his research revealed that another man was the owner of the searched residence [*Id.* at 60-61, 77-78]. Detective Mason stated that the room in which they

found most of the seized items was "pretty messy" with "quite a bit of stuff" in it, including boxes and clothing stacked against the wall [*Id*. at 68-69]. He conceded that they did not attempt to take any fingerprints from any of the surfaces or items in the home [*Id*. at 74-75]. Detective Mason testified that he was unaware that the individual in the home with Petitioner at the time he executed the search, Stephen Yates, was on probation at the time [*Id*. at 78]. He was, however, aware of Yates' general background [*Id*.]. Detective Mason also stated that none of the identification in Petitioner's name was dated later than 2006 [*Id*. at 86-87]. At the request of Petitioner's counsel, he identified Petitioner's current driver's license, which was admitted as an exhibit and which listed Petitioner's address as the same as that on Petitioner's checks [*Id*. at 89-90]. Detective Mason said he believed the address was that of Petitioner's mother [*Id*. at 93].

Various other State witnesses offered additional testimony [Docs. 6-4 and 6-5]. Petitioner elected not to testify and rested his case without presenting any additional proof [*See, e.g.*, Doc. 6-5 p. 22]. The jury convicted Petitioner of possession of 300 grams or more of cocaine with intent to sell, possession of more than one-half ounce but less than 10 pounds of marijuana with intent to sell, and possession of drug paraphernalia [Doc. 6-1 p. 24-26]. He was sentenced to an effective sentence of 40 years' imprisonment in the Tennessee Department of Corrections [*Id*. at 27-29]. Petitioner appealed [*Id*. at 48]. On November 14, 2013, the Tennessee Court of Criminal Appeals ("TCCA") affirmed the judgments of the trial court. *State v. Davis*, No. E2012-01398-CCA-R3-CD, 2013 WL 6047558 (Tenn. Crim. App. Nov. 14, 2013), *perm. app. denied* (Tenn. Mar. 13, 2014) ("*Davis I*"). The Tennessee Supreme Court denied discretionary review on March 13, 2014 [Doc. 6-14].

On May 12, 2015, Petitioner filed an application for post-conviction relief in the trial court that was amended following the appointment of counsel [Doc. 6-15 p. 3-23, 26-27]. Following a hearing, the post-conviction court dismissed the petition on June 6, 2017 [Doc. 6-15 p. 49]. The

TCCA affirmed the post-conviction court's judgment on August 13, 2018. *Davis v. State*, No. E2017-01308-CCA-R3-PC, 2018 WL 3853566 (Tenn. Crim. App. Aug. 13, 2018), *perm. app. denied* (Tenn. Dec. 5, 2018) ("*Davis II*"). The Tennessee Supreme Court denied Petitioner's application for discretionary review on December 5, 2018 [Doc. 6-26].

Thereafter, Petitioner filed his federal habeas petition on or about December 19, 2018, raising the following claims, as paraphrased:

1. Whether the State withheld material, exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

2. Whether the State post-conviction court abused its discretion by declining to rule on the merits of Petitioner's search warrant claim.

3. Whether Petitioner received the ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).

4. Whether the State post-conviction court abused its discretion by quashing the subpoena for Tasha Black.

This Court ordered Respondent to respond to the petition, and Respondent complied by filing an answer on March 6, 2019 [Doc. 7]. Petitioner filed a reply to the answer on or about April 29, 2019 [Doc. 10]. This matter is now ripe for review.

## II. LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in a State court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

4

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id.* at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11. This standard will allow relief on a federal claim decided on its merits in State court only where the petitioner demonstrates that the State ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). When evaluating the evidence presented in State court, a federal habeas court presumes the correctness of the State-court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The doctrine of procedural default also limits federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits his federal habeas claim). A procedural default exists in two circumstances: (1) where the petitioner fails to exhaust all of his available State remedies, and the State court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a State court clearly and expressly bases its dismissal of a claim on a State procedural rule, and that rule provides an independent and adequate basis for the dismissal. *See, e.g., Coleman v. Thompson*, 501 U.S.

5

722, 731-32, 735 n.1 (1991). A procedural default may be circumvented, allowing federal habeas review of the claim, only where the prisoner can show cause and actual prejudice for the default, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Id.* at 750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977).

"Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the State's procedural rules, or that his trial counsel rendered ineffective assistance. *See id*. at 753. The prejudice demonstrated to overcome the default must be actual, not merely a possibility of prejudice. *See Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (holding prejudice showing requires petitioner to bear "the burden of showing, not merely that errors [in the proceeding] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimension") (emphasis in original). A fundamental miscarriage of justice of occurs "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### III. DISCUSSION

#### A. *Brady v. Maryland*

In his first claim for relief, Petitioner claims that the State violated *Brady v. Maryland*, 373 U.S. 83 (1964) when it withheld from the defense that Petitioner's then-girlfriend, Tasha Black, was the "tipster" who initiated Detective Mason's investigation [Doc. 1 p. 5].

At some point during Petitioner's post-conviction proceedings, Petitioner's initial post-conviction counsel learned from Detective Mason that Ms. Black had contacted Detective Mason and told him that Petitioner "was cheating on her, was being abusive toward her[,] and [that he]

6

had drugs in [the] home" [Doc. 6-22 p. 15-16].[1] He claims that Detective Mason then "concocted a plan. . . to send a CI into the home for observation purposes" [*Id*. at 16]. Petitioner alleged in State court that the State improperly failed to disclose these communications under *Brady* [*Id*. at 22-24].

Detective Mason testified at the post-conviction hearing that Ms. Black had contacted him regarding problems she was having with Petitioner [Doc. 6-17 p. 75]. He developed a plan to have a CI enter the residence with a realtor under the guise of being a potential purchaser of the home, which was for sale at the time [*Id*. at 80-81]. Ms. Black was made aware of Detective Mason's plan to send a CI to look at the home [*Id*. at 81]. The CI observed marijuana in plain view when he went to the home [*Id*. at 82]. The CI returned a second time, this time with no warning whatsoever to Ms. Black, and he again observed marijuana [*Id*. at 84-85; *see also* Doc. 6-7 p. 4-6]. Detective Mason stated that he did not ask for consent to search from Ms. Black because he feared Petitioner would retaliate against her if she gave consent [*Id*. at 93-94].

After hearing all of the evidence, the post-conviction court denied Petitioner's *Brady* claim, finding "no exculpatory evidence [was] withheld by the State" [Doc. 6-18 p. 50]. Specifically, with regard to Ms. Black, the court noted that the information used to obtain the search warrant was obtained solely by the CI, and that any "tipsters" outside of that were irrelevant to the proceedings and immaterial to the requirements of *Brady* [Doc. 6-19 p. 20-21].

In post-conviction appellate proceedings, the TCCA applied *Brady*. *Davis II*, 2018 WL 3853566, at *7. After reviewing the record, the TCCA found that Detective Mason "did not rely on the information provided by Ms. Black to secure [a later requested] search warrant," and that "[h]is communication with her was simply regarding the CI entering the home she shared with the

---

[1] The alleged statements were introduced by way of Tammy Crayne, who testified in-chambers solely for purposes of preserving the issue for appellate review [Doc. 6-17 p. 130-131, 132-40]. Ms. Black did not testify at the hearing [*See* Doc. Doc. 6-18 p. 14-16; Doc. 6-22 p. 13].

7

Petitioner." *Id.* The court found that the challenged communications were neither "exculpatory or material to the Petitioner's case." *Id.*

To establish a *Brady* claim, a petitioner must show that the State withheld evidence favorable to the accused and material to either the petitioner's guilt or punishment. *Brady*, 373 U.S. at 87. The Supreme Court has articulated "three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006) (internal quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) (internal quotation marks and citation omitted).

The evidence in this case demonstrates that Ms. Black advised Detective Mason that Petitioner was being abusive toward her and that she had observed drug use in the home they shared. Detective Mason intimated to her that he planned on having a CI visit the home with a real estate agent. Detective Mason testified that Ms. Black did not know when the CI would be stopping by the house, and that he sent the CI back a second time without Ms. Black's knowledge. Ms. Black's statements to Detective Mason had no bearing on the validity of the search warrant Detective Mason's later obtained, which was based entirely on Detective Mason's own observations of the premises and information given to him by the CI. Further, Ms. Black was never called as a witness at Petitioner's trial. Therefore, whatever trickery or betrayal Petitioner might have experienced at the hands of Ms. Black, there is nothing in the record to suggest that

Ms. Black's knowledge that a CI would be viewing Petitioner's home at an unknown time with a real estate agent was favorable to Petitioner or material to his defense.

Accordingly, the Court finds that Petitioner has failed to demonstrate that the State court's denial of his *Brady* claim was contrary to, or involved an unreasonable application of, clearly established law, or that this claim was based on an unreasonable determination of facts in light of the evidence presented. This claim will be dismissed.

B.  **Search Warrant**

In his second claim for relief, Petitioner alleges that the post-conviction court abused its discretion by declining to adjudicate his claim that Detective Mason's search warrant was invalid [Doc. 1 p. 6].

On appeal of the denial of his post-conviction petition, Petitioner challenged the validity of his search warrant [Doc. 6-22 p. 25-26]. However, the TCCA declined to consider the merits of Petitioner's claim, finding "any issues related to the search warrant had already been litigated on trial and on appeal and were thus not properly presented at the post-conviction phase of the case." *Davis II*, 2018 WL 3853566, at *8, citing Tenn. Code Ann. § 40-30-106(h); *see also Davis I*, 2013 WL 6047558, at *5-7.

Fourth Amendment claims are not cognizable in federal habeas proceedings when the prisoner had a full and fair opportunity to litigate the issue in State court. *See Stone v. Powell*, 428 U.S. 465, 494 (1976). Here, Petitioner was granted a suppression hearing on his Fourth Amendment claim, and he raised the issue on direct appeal [Doc. 6-1 p. 41-42; Doc. 6-2 p. 93-204]. *See also Davis I*, 2013 WL 6047558 at *5-7. Therefore, Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in State court, and this claim does not present a cognizable basis for federal habeas review.

## C. Ineffective Assistance of Counsel

In his third claim for relief, Petitioner alleges that he received the ineffective assistance of counsel when his trial counsel failed to uncover that the "State withheld *Brady* material which would have been used as a part of the defense in the search warrant, confidential informant, and tipster issues" [Doc. 1 p. 8]. This claim was raised in Petitioner's initial and amended petitions for post-conviction relief, but it was abandoned on appeal [Doc. 6-15 p. 12-13, 17-23, 26-27; Doc. 6-22 p. 2].

A claim must be presented to the TCCA in order to meet the AEDPA's exhaustion requirement. *See Adams v. Holland*, 330 F.3d 398 (6th Cir. 2003); *see also* Tenn. S. Ct. R. 39 (establishing presentation of claim to TCCA is sufficient to exhaust State remedies). Therefore, by presenting this issue only to the post-conviction trial court and failing to pursue this claim to the TCCA, Petitioner failed to fully exhaust this claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that proper exhaustion requires petitioner to pursue claim through "one complete round of the State's established appellate review process"). Because there is no avenue by which Petitioner may now obtain State-court review of this claim, it is technically exhausted but procedurally defaulted under Tennessee law. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."); *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule).

Petitioner has not argued that that a fundamental miscarriage of justice would result from failure to review the claims, and the Court finds that exception inapplicable. The Court notes that, in some circumstances, the ineffective assistance of post-conviction counsel may provide cause to excuse the default of a substantial ineffective-assistance of trial counsel claim. *See Martinez v. Ryan*, 566 U.S. 1, 9, 14 (2012). In this case, however, Petitioner cannot avail himself of the

*Martinez* exception to secure review of this claim, as the holding of *Martinez* is inapplicable to claims raised in the initial collateral-review proceeding but defaulted on post-conviction appellate review. *See West v. Carpenter*, 790 F.3d 693, 698 (6th Cir. 2015) (finding ineffectiveness of post-conviction counsel sufficient to establish "cause" does not apply "at post-conviction appellate proceedings because those proceedings are not the 'first occasion' at which an inmate could meaningfully raise an ineffective-assistance-of-trial-counsel claim") (citation omitted). Accordingly, this claim is defaulted and barred from review.

### D. Abuse of Discretion

Finally, Petitioner asserts that the post-conviction court abused its discretion by quashing the subpoena for Tasha Black [Doc. 1 p. 9]. Petitioner raised this issue on post-conviction appeal but failed to cite the record or legal authority, and the TCCA agreed with the State that the issue was waived. *See Davis II*, 2018 WL 3853566, at *8. Citing Tennessee law, the court noted that while post-conviction petitioners have a right to subpoena witnesses, courts have the concomitant authority "to prevent abuse of its process by abating subpoenas for witnesses whose testimony would be immaterial." *Id*. (citation omitted). The TCCA found that since "Ms. Black's communication with Officer Mason was not *Brady* material, and that the legality of the search warrant was not a claim upon which post-conviction relief could be granted, any testimony Ms. Black could have provided was not material to the proceedings." *Id*. Therefore, the TCCA determined, there was no abuse of discretion by the post-conviction court when it granted the motion to quash Ms. Black's subpoena. *Id*.

The Court finds this claim procedurally defaulted, because Petitioner failed to cite any federal authority in support of his claim on post-conviction review [Doc. 22 p. 2]. The exhaustion of state remedies requires that petitioners "fairly present" their federal claims in state court. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to

11

correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."). Petitioner's failure to cite a constitutional basis in State court is confirmed by the TCCA's decision, which analyzed and denied Petitioner's claim solely under Tennessee law. *See Davis II*, 2018 WL 3853566, at *8. Because Petitioner failed to alert the State court to the federal nature of his claim, he failed to exhaust his claim as a constitutional question, and it is now procedurally defaulted. *See, e.g., See Jones*, 696 F.3d at 483 ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."); Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule).

Even in the absence of a procedural default, however, this claim would not warrant relief. The Sixth Circuit has made it clear that a court making a determination of whether the issuance of a subpoena is warranted is vested with wide discretion and, as such, a reviewing court should not reverse unless the exceptional circumstances of the case indicate that the defendant's right to a complete, fair, and adequate trial was jeopardized. *United States v. Rigdon*, 459 F.2d 379, 380 (1972) (quotation marks omitted). During post-conviction proceedings, Petitioner subpoenaed Ms. Black, and following an in-chambers hearing regarding the admissibility of Ms. Black's testimony, the post-conviction court granted the State's motion to quash the subpoena after it determined that any evidence between Ms. Black and Detective Mason was not relevant to the claims raised in the post-conviction petition [*See* Doc. 6-15 p. 42, 43-44; Doc. 6-17 p. 63, 95-96; Doc. 6-18 p. 10-12, 14-16].

As the Court noted above, a court has the authority "to prevent abuse of its process by abating subpoenas for witnesses whose testimony would be immaterial." *State v. Womack*, 591 S.W.2d 437, 443 (Tenn. Ct. App. 1979). Because Petitioner intended to question Ms. Black about the issues the court had already deemed irrelevant, the post-conviction court acted within its

discretion in quashing the subpoena without an offer of proof. Accordingly, the Court finds that this claim is procedurally defaulted and otherwise does not form a basis for federal habeas relief.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

## V. CONCLUSION

Petitioner has failed to demonstrate an entitlement to federal habeas relief. Therefore, his petition for a writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**. A certificate of appealability from this decision will be **DENIED**.

Further, the Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

13

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

    */s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE